David Fox, Appellant, v. Arctic Placer Mining and Milling Company, Respondent.

Contract — officer of corporation — personal services rendered by officer of corporation as expert mining engineer — whether such services were outside of plaintiff's work as director of corporation, question for the jury.

1. In order to recover against a corporation on an implied contract to pay for valuable services rendered to it by a vice-president and director thereof, the plaintiff must establish that the services rendered by him were outside of his duties as such director and vice-president and that they were rendered with the expectation of pay, and accepted under such conditions that the officers of the defendant as reasonable men ought to have understood that they were to be paid for, the presumption being that they were rendered gratuitously being overcome by circumstances showing the contrary.

2. The basis of a recovery for personal services must be a contract, and this must either be proven or implied. If the contract be not expressed, it may be implied from the mere rendition and acceptance of the service. Then the presumption is created that such services were to be compensated. If, on the contrary, it be the natural thing because of the relationship of the parties that services be performed without expectation of pay, then there is no such presumption. In the latter class falls a director or officer of a corporation who performs the ordinary and usual services for such corporation such as any layman can perform without special knowledge or skill.

3. The complaint alleges that special services were rendered by plaintiff who was vice-president and a director of defendant. The evidence discloses that the only duty which the vice-president of the corporation had was to act in the absence of the president. It appears that the plaintiff advised and consulted with various officers of the

defendant, rendering services of a technical engineering nature with reference to the proposition for a lease of the defendant's property, and the preparation of maps and plans, for the purpose of effecting a sale of the property to another mining corporation.   Plaintiff contends that there was an issue for the jury, because his services were different and outside of the duties of his office.   *Held,* that as to the draft of a lease and compilation of surveys by plaintiff, in view of the previous dealings of the parties, a jury might say that these were peculiar, extra and special services, beyond consultation and advice, which plaintiff would not, in the ordinary course of business, be expected to burden himself with without compensation; therefore, it was error to dismiss the complaint.

*Fox* v. *Arctic Placer Mining & Milling Co.,* 185 App. Div. 761, reversed.

(Argued April 28, 1920; decided June 1, 1920.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 20, 1919, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph A. Warren* for appellant.   If there were an agreement, either express or implied in fact, between the plaintiff and the defendant to pay for his services, and if such services were outside of plaintiff's duties as director and vice-president of the corporation, the court erred in refusing to submit the case to the jury.   (*Young* v. *U. S. Mortgage & Trust Co.,* 214 N. Y. 279; *Bagley* v. *Carthage, W. & S. H. Ry. Co.,* 165 N. Y. 179; *Gaul* v. *Kiel & Arthur Co.,* 199 N. Y. 472; *Barril* v. *Calendar Insulating & Waterproofing Co.,* 50 Hun, 257; *Bogert* v. *New York & Long Island R. R. Co.,* 118 App. Div. 50; 191 N. Y. 550; *Talcott* v. *Olcott Mfg. Co.,* 11 Wkly. Dig. 141; *Outterson* v. *Fonda Lake Paper Co.,* 20 N. Y. Supp. 980; *Corinne Mill, Canal & Stock Co.* v. *Toponce,* 152 U. S. 405.)   The services rendered by the plaintiff were outside of his duties as

vice-president and as director.    (*Corinne M., C. & S. Co.
v. Toponce,* 152 U. S. 405; *Bogert* v. *N. Y. & L. I. R. R.
Co.,* 118 App. Div. 50; 191 N. Y. 550.)

*Noah A. Stancliffe* for respondent.    The complaint was
properly dismissed.    (*Palmer* v. *Scheftel,* 183 App. Div.
77; *Gill* v. *N. Y. Cab Co.,* 48 Hun, 524; *Mather* v. *Eureka
Co.,* 118 N. Y. 629; *Gaul* v. *Kiel & Arthe Co.,* 199 N. Y.
476; *Stout* v. *Security Co.,* 82 App. Div. 129; *Farmers'
Loan & Trust Co.* v. *Housatonic Co.,* 152 N. Y. 251;
Thompson on Corp. [2d ed.] §§ 1715, 1717, 1719, 1740;
*Young* v. *U. S. M. & T. Co.,* 214 N. Y. 279; *Bagley* v.
*Carthage R. R. Co.,* 165 N. Y. 179; *Bogert* v. *N. Y. & L.
I. R. R. Co.,* 118 App. Div. 50.)

Elkus, J.    The plaintiff, a mining engineer, seeks to
recover the reasonable value of his personal services
claimed to have been rendered to the defendant between
the first day of November, 1913, and the first day of
April, 1915, at its special request therefor.

The defendant is a mining corporation and was engaged
in the business of mining in Alaska, having an office
in New York city.

During the times referred to, plaintiff was vice-presi-
dent and a director of the defendant and owned one
thousand shares of its capital stock of the par value of
$5,000, for which he paid $50.

In 1908, under the defendant's employment, the plain-
tiff went to Alaska and took charge of the company's
work there.    This was done in pursuance of a letter
written by the defendant to the plaintiff and for which
the plaintiff was paid at the rate of $500 a month and
expenses.    The following year similar work was per-
formed by the plaintiff for which he received identical
pay.    In 1910, although there appears to have been no
express employment, the plaintiff again went to Alaska
at the defendant's retainer and engaged in its work there

for which he was paid a substantial sum and expenses. The same course exactly was followed in 1911. In 1912 the plaintiff remained in New York, and, without express employment, was consulted by the defendant, advised with its officers and received $1,500 as compensation therefor. In 1913, at the request of defendant's officers, plaintiff went to Alaska and did some work there representing the defendant, for which he was compensated and his expenses paid. This work had to do with negotiating an option for a drilling and dredging lease of the company's property.

On October 25, 1913, the president of the defendant referred to the plaintiff a telegram requiring advice from the superintendent of the defendant and thereafter, between the dates heretofore mentioned, the plaintiff advised and consulted with various officers of the defendant, rendering some services of a technical engineering nature with reference to the proposition for a lease of the defendant's property, the preparation of maps and plans, for the purpose of effecting a sale of the property to another mining corporation, and performed services different and other than those usually performed by an official of a corporation, and the services thus rendered form the basis of the claim in suit.

It appears that at times when the plaintiff left the state of New York he made an express contract for his services, but it appears that at other times he rendered services without making any express contract therefor and received substantial compensation for the same.

After the presentation of these facts, the trial justice dismissed the complaint. The plaintiff contends that there was an issue for the jury, because his services were different and outside of the duties of his office, either as vice-president or director, and that the circumstances of his previous employment and payment therefor were such as to warrant the finding of an intention on his part to charge and receive pay for his services and

expectation and agreement on the part of the defendant to pay therefor.

There is no formal agreement or contract of employment either alleged or proven. There is no resolution of the board of directors authorizing the plaintiff's employment or agreeing to remunerate him for his services. The by-laws of the defendant were neither offered nor admitted in evidence, so there is nothing to show what duties were imposed upon the plaintiff as vice-president or director. The only evidence with reference to this is the uncontradicted testimony of the plaintiff that he was elected vice-president so that he might execute a lease on the defendant's behalf. The plaintiff received no compensation either as vice-president or director.

It is a well-settled rule that directors and officers of a corporation serve without compensation for performing the usual and ordinary duties of their offices, unless an express provision is made therefor either by statute, charter, by-laws or agreement. The question to be considered here, therefore, is whether the services rendered were outside the official duties of the plaintiff and, if this be true, the rule is qualified.

The basis of a recovery for personal services must, of course, be a contract, and this must either be proven or implied. If the contract be not expressed, it may be implied from the mere rendition and acceptance of the service. The presumption is created that such services are to be compensated, because no one is expected to labor without hire. (*Barney* v. *Fuller*, 133 N. Y. 605.) If, on the contrary, it be the natural thing because of the relationship of the parties that services be performed without expectation of pay, then there is no such presumption. In the latter class falls a director or officer of a corporation who performs the ordinary and usual services for such corporation such as any layman can perform without special knowledge or skill.

Unless the corporation specifically agrees to pay for such services, it is not required to do so.

In the instant case, therefore, there ordinarily would be no presumption that special compensation was intended or expected even if the services were rendered at the request of the corporation or of its officers, so far as the services do not differ from those required from any one assuming the position, because it would be contrary to public policy to permit such a presumption, but, notwithstanding this, a promise to pay may be proven in the same manner as any other fact may be established. That is, an agreement may be inferred from other evidence; from a course of practice or where the services are outside the usual duties of one holding the office which the plaintiff held. The complaint alleges that special services as consulting engineer were rendered. Such an agreement may be evidenced by proof or circumstances which tend to show that the services were rendered with the expectation and agreement on both sides that they would be compensated for. (*Bagley* v. *Carthage, W. & S. H. R. R. Co.*, 165 N. Y. 179; *Bogart* v. *New York & Long Island R. R. Co.*, 118 App. Div. 50; affd., no opinion, 191 N. Y. 550; *Gaul* v. *Kiel & Arthe Co.*, 199 N. Y. 472; *Young* v. *U. S. Mortgage & Trust Co.*, 214 N. Y. 279; *Barril* v. *Calendar Insulating & Waterproofing Co.*, 50 Hun, 257; *Talcott* v. *Olcott Mfg. Co.*, 11 Weekly Digest, 141; *Corinne Mill, Canal & Stock Co.* v. *Toponce*, 152 U. S. 405.)

In *Bagley* v. *Carthage, W. & S. H. R. R. Co.* (165 N. Y. 179, 182) the plaintiff was a director and president of the defendant. There was no express resolution of employment by the board of directors. The trial judge, however, submitted to the jury whether the plaintiff rendered any service outside of his duties as director and president of the corporation and whether there was an agreement on the part of the directors to employ him to perform such

services.   The jury having answered these questions in the affirmative, this court affirmed the judgment, saying: " Neither is it essential to the plaintiff's right of recovery that he should have been employed under a formal resolution of the board.   *It is sufficient if, from the nature of the employment, the importance of the subject matter and the action of the directors of the corporation, the inference is authorized of the employment as alleged.*"

The evidence in the instant case discloses that the only duty which the vice-president of the corporation had was to act in the absence of the president.   The services which the plaintiff rendered were not performed as vice-president.   They were services which called for special qualifications which the plaintiff possessed as a mining engineer and an expert in mining matters.   As a director, the plaintiff could not act as an individual. His work as a director, unless there be some by-law or provision to the contrary which does not appear here, is performed as a member of the board of directors. The board of directors did not request the plaintiff to do the work which he did.   It was largely done at the special instance and request of the president, the executive officer of the corporation, as appears by his letter of November 11, 1913, and the reply thereto.   (*Young* v. *U. S. Mortgage & Trust Co.*, 214 N. Y. 279.)

The work done included the drawing of maps, plans, making photographs of the ditch system of the defendant's property, the preparation of a long and technical letter describing the nature of the company's property and the manner in which it could be worked to the best advantage in order to further the contemplated sale or lease of the property.   Such engineering and technical services are not usually performed by a director as such. (*Corinne Mill, Canal & Stock Co.* v. *Toponce,* 152 U. S. 405.)

A jury might be warranted in finding that such services were entirely outside of a director's work and they might

well include in this the drafting of a lease of the defendant's property, which required a special knowledge and was part of the services which the plaintiff rendered. Whatever inferences may be drawn in the instant case from the circumstance that the money to pay the plaintiff theretofore had been advanced by Mr. Cutler and Mr. Fallow, two other officers of the defendant, who were large stockholders of the company, are for the jury to decide. The question as to whether or not upon all the evidence there was an agreement to employ and pay the plaintiff, expressed or implied, was for the jury and it was, therefore, error to dismiss the complaint.

The judgments dismissing the complaint should be reversed and a new trial ordered, with costs in all courts to abide the event.

Pound, J. Plaintiff, a mining engineer, rendered " consulting service " to the defendant corporation, of which he was vice-president and a director, without any agreement as to compensation. The services were valuable.

To make out his case, he must show an implied contract to pay him. To do this he must satisfy a jury:

1. That the services rendered by him were outside of his duties as such director and vice-president.

2. That they were (a) rendered with the expectation of pay, and (b) accepted under such conditions that the officers of the defendant as reasonable men ought to have understood that they were to be paid for. (*Marcy* v. *Shelburne Falls & Colrain St. Ry. Co.*, 210 Mass. 197; *Fitzgerald & M. Construction Co.* v. *Fitzgerald*, 137 U. S. 98, 111.)

What can be said, as matter of law, as to the duties of plaintiff as vice-president and director? Can it be clearly said that it was the duty of plaintiff, in his capacity as an officer and director of defendant, to

render gratuitously the services sued for? Was he under any obligation to consult with and advise the other officers of the company, not in the absence of the president, but outside of meetings of the directorate, without pay?

" Neither the charter nor the by-laws of the corporation cast any special duties on the vice-president or director. The vice-president was only required to act in the absence of the president, and no special duties of management were in terms cast upon the president. It was provided that he preside at all meetings, sign all certificates of stock, contracts, checks, etc., ' and generally do and perform such other duties as are incidental to his office and not in conflict with these by-laws and the articles of association.' No duty was cast on any individual director as such. The board of directors, *as a body*, were charged with the usual duty of care of the affairs of the corporation, but all the power and duty cast upon them was upon them as a board, and not individually." (*Corinne Mill, Canal & Stock Co.* v. *Toponce*, 152 U. S. 405, at p. 408.)

What was said in *Kavanaugh* v. *Commonwealth Trust Co.* (223 N. Y. 103) as to the affirmative duty of a director in a financial institution, deals with him as a member of the board and not as an individual. It is only " as a body " that directors are chosen " to manage and control the business of the corporation." It may not well be said that the services which plaintiff performed were those which an unpaid director or vice-president owes to his company. Such a one is not always at the beck and call of the corporation, when his duties are not so defined.

What can be said as to the inference that the services rendered by plaintiff were not gratuitous? No obligation is implied from the mere rendering of beneficial services by an officer to his corporation, outside his duties as such officer. When a director is called on to render services other than acting on the board in the intelligent direction

of the affairs of his company, the services are ordinarily deemed gratuitous if they are mere matters of advice as to policy, or even more important services if not customarily compensated.

" It is common knowledge that valuable services are rendered frequently to business, banking, insurance and public service as well as to charitable corporations by their president and directors under circumstances which negative any presumption that compensation is to be paid." (*Marcy* v. *Shelburne Falls & Colrain St. Ry. Co.,* *supra.*)

The law does not allow corporations to blunder by implication into obligations to their officers, not contemplated at the time services were rendered.

If plaintiff had been neither vice-president nor director of defendant, contractual liability would ordinarily be inferred as matter of law from the rendition of valuable services by him at the request of the corporation. But here the presumption of fact is that, although the services were valuable, there is no intention either to ask for or to make payment when an officer of a corporation is called in to consult and advise with the other officials. Has that presumption been overcome by the circumstances, showing the real intention of the parties in this ease? I think not. Officers of a corporation are not expected to charge for such services and no reasonable man would understand that compensation was expected therefor. When a director acts *as a part of the corporation,* he is understood to act gratuitously and no agreement is implied to the contrary. When we come to the draft of the dredging lease and the compilation of the surveys by plaintiff, in view of the previous dealings of the parties, a jury might say that these were peculiar, extra and special services, beyond consultation and advice, which plaintiff would not, in the ordinary course of business, be expected to burden himself with without compensation. If he had been called upon merely to prepare such papers

for the company, I think a reasonable man might say that he stood as a lawyer director, retained to act for his company in a law suit, expecting pay and with the tacit understanding that he should be paid.   Yet it might be said that even these services were the mere incidents and indicia of intelligent advice, rendered without reward or the hope thereof, except as the corporation's prosperity might be thus advanced, to plaintiff's indirect gain and advantage.

I concur that a new trial should be granted.

Andrews, J. (dissenting).   The defendant is a corporation owning gold mines in Alaska.   Apparently it was organized in 1907 after a consultation between a Mr. Cutler and a Mr. Fallows who were interested in the proposed company and the plaintiff who was a mining engineer, and who at that time had had much experience in Alaska.   Then or soon afterwards, Mr. Cutler became its president, the plaintiff its vice-president and Mr. Fallows its secretary and treasurer.   All three were directors, and although there were two others on the board, they were the active members.   There was no provision for compensation for directors or officers.   A large majority of the stock was held by Mr. Cutler and Mr. Fallows. Mr. Fox had 1,000 shares for which he had paid $50. The offices of the corporation were at 30 Church street, New York, in Mr. Cutler's private office.   In the same building Mr. Fallows and Mr. Fox also shared adjoining offices in the same suite.   The former was interested in a so-called Philippine company engaged in business in the Philippine Islands.   At times the plaintiff was employed by this corporation.   His relations with Mr. Cutler and Mr. Fallows seem to have been intimate.   In 1908, 1909, 1910 and 1911 the plaintiff went to Alaska during the summer months to supervise the operations of the defendant.   This was work clearly outside the ordinary duties of a vice-president or director.   For some of

these trips he was expressly employed by the defendant's directors and his compensation was fixed. For others the record shows no express contract. In each case, however, he was paid for such services. In 1912 the plaintiff remained in New York. On behalf of the defendant he did some work as a consultant, without any express contract. For this he received $1,500. In August, 1913, he again was engaged to go to Alaska to examine into matters which were not proceeding satisfactorily. While there he negotiated an option for a dredging and drilling lease, made a survey for the extension of a ditch, and discussed a sale of the property to another corporation, or if that was impossible a sale of the defendant's ditch rights. He returned to New York in September and was paid for the trip. Thereafter, between November 1, 1913, and April 1, 1915, he rendered services to recover the value of which, on the theory of *quantum meruit*, this action is brought.

It is important to define the nature of these services. Under the mining laws, to hold unpatented claims, it was necessary to do on each a certain amount of assessment work. Apparently one Brower had agreed to drill on the defendant's claims. Late in October news was received that he would not drill on those situated north of one called Claim 8. Some ditches had been dug connecting with these northern claims, but the title to these ditches was disputed, and, therefore, reliance could not be placed upon this work as applicable to the required assessment work. Under these circumstances Mr. Cutler requested Mr. Fox to consult with Mr. Fallows and advise what action should be taken. This consultation resulted in a telegram of inquiry to the defendant's representative in Alaska and a letter from Mr. Fox to Mr. Cutler explaining the situation.

Another mining corporation, in want of water for its operations, by extending its ditch for four miles could connect with and use a ditch built by the defendant.

While in Alaska, as we have seen, the plaintiff endeavored to negotiate a sale of this ditch.   To this end he had surveyed and taken notes as to the necessary connection. In a letter to Mr. Cutler on November 12 the plaintiff says the matter of the sale should be presented to the suggested purchaser.   Mr. Fox had not compiled the results of his surveys.   Probably until this was done, his work on this subject, for which he had been paid, would be useless to the defendant.   He offered to and did make this compilation, and also a tracing showing the proposed extension.   Conferences were had between the three officers, and the matter was left wholly to the judgment of Mr. Fox.   There were letters between Cutler and Fox on the subject and letters from Fox to the proposed purchaser, submitted to and approved by Cutler.   Apparently the negotiations fell through.

On December 30 a telegram with reference to the option for a dredging lease was referred by Cutler to Fox and he was asked to draft a form of a dredging lease.   He did so, taking the detail from the option he had given while in Alaska and copying appropriate paragraphs from similar leases in his possession and sent it to Mr. Cutler. Then or a day or two later the latter went to San Francisco.   Mr. Fox was to be there also on his way to the Philippines and Cutler asked for a consultation in that city.   On his way there Fox was informed by Fallows that one Johnston from whom the defendant had bought certain ditches, and who had not been paid in full, was clamoring for his money and he was requested to consult Cutler on this subject also.   In San Francisco there was a consultation between Cutler and Fox and then both the lease and the Johnston matter were submitted to an attorney for his advice.   The lease, amended by the attorney and containing certain additional clauses, was thereafter signed.   Fox interviewed the builder of a dredge to be used by the lessees and gave him some necessary information.   He also wrote on Cutler's request

a letter of instruction or advice to the working manager of the defendant. What became of the Johnston matter does not appear.

On February 12, 1914, Mr. Fox sailed for the Philippines. He remained there until October 30. While there he received a letter from Fallows giving him news of the company and also a similar letter from Miss Matson, one of the inactive directors. He also from time to time received reports as to the progress of the defendant, and as far as possible kept himself in touch with its affairs. As he passed through San Francisco on his return he again had several interviews with the dredge builder, giving him such information as he could. From the time of his reaching New York in December, 1914, to April, 1915, he was employed by the Philippine corporation. His office again adjoined that of Mr. Fallows. But in regard to the defendant he gave advice as to its management, the disposal of old equipment, minor leases on a part of the property and general information.

All these services for which the plaintiff now seeks compensation are defined by him as " consulting service " and were rendered whenever he " was available." Whenever he was in New York he was " right on the spot." As we have seen, he had been paid for similar services rendered in 1912. But it also appears that at other times he consulted with Mr. Fallows and Mr. Cutler and if necessary wrote letters, and for this neither received nor expected compensation.

In brief, therefore, the plaintiff at the request of the defendant's president (1) consulted and advised about assessment work; (2) consulted with the other officers and with a proposed purchaser as to a sale of some of the defendant's property; (3) prepared a draft for a dredging lease of some of defendant's claims and consulted in regard thereto with his co-directors, an attorney and the lessee, and as to the dredge to be used with its manufacturer, (4) consulted with the president and an attorney

as to a claim against defendant's property. Without any such express request, so far as appears, he (1) compiled the result of his survey as to the ditch, (2) gave advice as to the management of the defendant.

A director and officer of a corporation may not recover compensation for services, rendered to it, within the line of his duties as such officer and director, in the absence of a prior express contract therefor, created by the charter, the by-laws or by the resolution of some body duly given by them or by the stockholders authority to make such a contract. No such contract existed in the case before us. The directors, however, or an officer empowered to make such a contract with a stranger, may employ a director to perform extraordinary services outside of the scope of his duties and may agree to pay him therefor. (*Bagley* v. *Carthage, W. & S. H. R. R. Company*, 165 N. Y. 179.) Whether such a contract has been made is a question of fact. Its existence may be shown by proof of an offer and its acceptance; or by such circumstances as show an intent on the part of the corporation and its directors that such services shall be rendered and paid for. Again here there was no offer of employment and no express acceptance. As between a stranger and a corporation the mere fact that beneficial services have been rendered with the latter's knowledge or received affords the requisite evidence of a contract. And in other jurisdictions the same rule has been applied to a director, provided the services rendered by him are outside the ordinary scope of his duties. So far as I can discover, it has never been so held in this court. Nor should it be. He is a trustee for the stockholders. And as a trustee the mere fact that services were rendered by him gives rise to no presumption that both parties understood they were not to be gratuitous. Other facts must be shown which legitimately give rise to the inference. The nature of the services, and their value, the time occupied by the director, the extent of the interference with his regular occupation, the place

where and the circumstances under which the services were rendered, the relation of such services to the services he was required to render as a director, whether or not other officers were paid for similar work, whether he himself had or had not been paid previously for the like acts — other matters of this character are relevant.

Before a recovery can be allowed in this case, therefore, the plaintiff must show that the services for which he seeks to recover were not only outside the scope of his duties as vice-president and director but that they were rendered under such circumstances as justify a finding of fact that both he and the corporation expected that they were to be paid for.

As to the greater part of the services, they were clearly within the line of the plaintiff's duty as a vice-president and director. He had been chosen for that place to manage and control the business of the corporation. He was bound to use such care in that regard as if the business were his own. He was in part responsible for its policy. He should see that the transactions into which it entered were proper, that its property was not wasted. The mere attendance at stated meetings of the board of directors, the mere casting of his vote at such meetings upon propositions presented was not the limit of his duties. He should know and give direction as to the general affairs of the institution and its business policy, and have a general knowledge of the manner in which the business is conducted, the character of the investment and the employment of its resources. ( *Kavanaugh* v. *Commonwealth Trust Co.,* 223 N. Y. 103.) True this was said of a director of a bank, but similar principles apply to all directors. Consultations with other directors or with the executive officers as to the course to be pursued, information given to prospective purchasers at the request of the president as to the property, are distinctly within his duties as a director. " Consulting service," the plaintiff properly calls it. And being within the line of his duty,

the fact that the plaintiff had or had not previously been paid for similar services is immaterial.   (*N. Y. & N. H. R. R. Co.* v. *Ketchum*, 27 Conn. 170.)

It may be possible, however, that a question of fact was presented whether two particular bits of work were within the line of the plaintiff's duties.   At the request of the president he prepared and submitted to him a draft of the dredging lease.   On his own initiative he compiled the result of his surveys.   But even so, there was no evidence tending to show that these services were rendered on the understanding that they were to be paid for.   An option for the dredging lease had been made by Mr. Fox while in Alaska.   Mr. Cutler, as we have seen, in January asked him to give him a draft of such a lease as he thought proper, containing a clause that Mr. Cutler believed important.   Three days later Mr. Fox sent such a draft to Mr. Cutler, saying a lawyer could add any finishing touches that were necessary.   The purpose was to assist the president in the completion of the transaction begun by the option.   From these facts alone, the jury would not be justified in drawing the necessary inference. Little time was occupied.   The work was of slight importance.   No hint of an agreement to pay Fox is found anywhere.   No demand for payment was made until long afterwards.   It was a transaction for the benefit of the corporation which the three officers were attempting to bring about — two of them at least without thought of compensation.   It was closely connected with work for which he was entitled to no compensation.   The compilation of the data of the survey was not requested — it was offered.   It was to make available work for which Mr. Fox had already been paid.   It was a minor matter taking little time.   Again there was no hint of payment. And in connection with all these matters, it should be remembered that the right of action of a director against his corporation for services rendered, where the contract to pay for them is not clear, should not be extended.

The judgment appealed from should be affirmed, with costs.

HOGAN, J., and POUND, J., in memorandum, with whom HISCOCK, Ch. J., concurs, concur with ELKUS, J.; COLLIN and McLAUGHLIN, JJ., concur with ANDREWS, J.

Judgments reversed, etc.