CENTRAL UNION TRUST COMPANY OF NEW YORK, as Administrator, etc., of ROSE E. KENT, Deceased, Suing on Behalf of Itself and All the Stockholders of the JAMESTOWN WORSTED MILLS, a Corporation of Jamestown, N. Y., Similarly Situated, Who May Desire to Come in, Respondent, Appellant, *v.* ALMET N. BROADHEAD and Others, Appellants, Respondents.

Fourth Department, June 30, 1925.

Corporations — stockholders — action by minority stockholder for accounting, receivership and injunction against alleged unlawful acts of directors in management of corporation — evidence does not show that directors acted for their own benefit to detriment of corporation.

The judgment in favor of the plaintiff in this action, which was brought by a minority stockholder for an accounting and receivership of the corporation and an injunction against the continuance of the alleged wrongful acts of the

directors, must be reversed, since the contention by the plaintiff that the directors acted for their own benefit to the detriment of the corporation is not sustained by the evidence.

APPEAL by the defendants, Almet N. Broadhead and others, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Chautauqua on the 6th day of April, 1923, upon the report of an official referee appointed to hear, try and determine the whole issues, with notice of intention to bring up for review an order entered in said clerk's office on the 8th day of February, 1922, substituting the above-named plaintiff for the original plaintiffs in this action.

Appeal by the plaintiff, Central Union Trust Company of New York, from certain portions of said judgment.

*Clare A. Pickard* [*De Coursel Fales* and *Clarence G. Pickard* of counsel], for the plaintiffs.

*Marion H. Fisher* [*Frank H. Mott* of counsel], for the defendants.

PER CURIAM:

Plaintiff, a minority stockholder of the Jamestown Worsted Mills, on behalf of itself and other stockholders similarly situated, sues the individual defendants as directors, charging a continued course of favoritism and discrimination in their own behalf in matters of management where their personal interests were in conflict with those of the corporation. The complaint states many specific acts of wrongdoing and alleges generally other acts to defendants' own advantage contrary to their obligation of good faith to the corporation and to the minority stockholders. An accounting, a receivership and an injunction against the continuance of the alleged wrongful acts are asked for.

The learned official referee, after a prolonged trial and full consideration, found against the contentions of plaintiff as to all acts specifically charged, and as to all but two of the matters which were litigated under the general charge. We are in accord with him on all his findings and conclusions, except in respect to the two matters referred to. The network of proof and inference is so wide and so complicated as to preclude any discussion within reasonable limits. The whole of it has had careful consideration, both in itself and in connection with the extended briefs of counsel. We merely state our conclusions on the two points where, with deference, we disagree with the referee.

1. On the issue of joint salesmen, the referee found that the system itself and its adoption under all the circumstances, were justified, provided the salesmen were left to act impartially. Under the interpretation put by him on the Reynolds letters, he was of

opinion that they were not thus left free and that in consequence the Jamestown Mill suffered to some extent.  Even if we should accept that interpretation, we must still reach a different conclusion. The total output of the mill each year was sold.  As to this there is no substantial dispute.  But the referee thought that the output might have been increased, if the joint salesmen had sent in more orders.  We think the weight of the evidence shows that the mill was operated at capacity — not its physical capacity, but its capacity as limited by the social and industrial conditions during the war years.  The production was not curtailed by lack of orders.  The evidence fairly shows that there were ample excess orders and that the salesmen were each season called in from the field.  And the findings of the referee on other issues dispose of the plaintiff's contention that there was deliberate curtailment by reason of diversion of raw materials and otherwise.  If, as we think were the facts, the mill was operated at capacity and all its product sold, inferences sought to be drawn from figures dealing with comparative sales and yardage are not persuasive.  But if we resort to the figures, still we are unable to reach the conclusion arrived at below.  If it was to be expected that the Broadhead Mill would sell about twice as large a quantity of dress goods as the Jamestown Mill, then there is nothing unexpected in the figures showing the results credited to the joint salesmen by plaintiff's tabulations, for the ratio is less rather than more.  There is no indication of favoritism here.  But the plain fact is that statistics mean little or nothing when considered apart from the many surrounding facts and circumstances in the light of which they must be interpreted.  The Jamestown Mill was producing men's wear as well as dress goods.  Proportionate production is a matter of business policy.  If we take the figures for the total production, we find a steady and consistent increase from year to year and each year, which seems justification enough.

2. On the issue of house commission sales, we think the evidence is sufficient to warrant the payment of the commissions under the authority of *Fox* v. *Arctic Placer Mining & Milling Co.* (229 N. Y. 124).  We may even accept the narrower rule of Judge POUND's concurring memorandum therein, and reach the same conclusion. Mr. Reynolds was the salaried employee of the Broadheads.  He was employed by the Jamestown Mill to make these sales.  His relation to the Broadheads was known.  His employment was in effect the employment of the Broadheads.  S. B. Broadhead was a director and president, and A. N. Broadhead was a director and treasurer of the Jamestown Mill.  The selling of goods was outside of their official duties.  The fact that they were employed to sell

these goods in the manner stated carries with it the implication that the Jamestown Mill expected to pay and the Broadheads expected to be paid for the services rendered. The corporation clearly did not blunder by implication into obligations to its officers not contemplated at the time the services were rendered. The sales were of great benefit to the corporation and if they had been made through any other agency the same commissions would have been paid.

The interlocutory judgment should be modified in accordance with this opinion and as modified affirmed, and final judgment should be directed dismissing the complaint, with costs. Certain findings of fact disapproved and reversed and conclusions of law disapproved. Certain new findings made.

All concur. Present — HUBBS, P. J., DAVIS, SEARS, CROUCH and TAYLOR, JJ.

Interlocutory judgment modified in accordance with the opinion and as modified affirmed, and final judgment directed dismissing the complaint, with costs. Certain findings of fact disapproved and reversed and conclusions of law disapproved and certain new findings made.