## UPRIGHT v. BROWN.

### No. 397.

Circuit Court of Appeals, Second Circuit.

Aug. 15, 1938.

Hyman I. Fischbach, of New York City (Selig Edelman and Hyman I. Fischbach, both of New York City, of counsel), for appellant.

David W. Kahn, of New York City (David W. Kahn and Nathan Siegel, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit by the trustee of Consolidated American Royalty Corporation, a debtor in reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, to recover from the defendant Dickson Q. Brown 15,000 shares of preferred stock of Royalty Corporation of America and also any dividends received by the defendant therefrom. The special master allowed recovery and his report was confirmed by the district court.

On February 16, 1933, the debtor corporation owed two bills to its attorneys which were rendered in 1931, and aggregated $5,000. It also owed the First Na-

tional Bank of Oklahoma and the American Finance Corporation $136,000 for which it issued its notes payable on or before six months from that date. The notes payable to the bank were for $9,600 and $72,000, and those payable to the Finance Corporation were for $48,000 and $6,400. They were not paid when due although on the $72,000 note payments amounting to $14,188.95 were made on account between September 7, 1935, and November, 1935, and on the $48,000 note payments amounting to $9,459.30 were made on account between September 7, 1934, and November 2, 1935. On July 13, 1935, a firm of lawyers wrote the debtor demanding payment of the amounts due on the Oklahoma Bank and Finance Corporation notes and stating that unless payment was made at once "the property pledged as security for each of the * * * notes would be sold." The notes were not renewed until nearly six months later when the old notes were returned stamped "Renewed" December 5, 1935, and renewal notes were given including an additional loan which was sufficient to pay off the lawyers' bills rendered in 1931 for $5,000.

On or about November 3, 1933, the defendant, who was then director, vice-president and treasurer of the debtor, loaned to it the sum of $4,501.56 and asserted a claim for back salary for the amount of $9,583.34. At the same time the debtor gave its notes to the defendant for $15,000 representing the latter's loan and claim for back salary and shortly thereafter transferred to him 15,000 shares of preferred stock of Royalty Corporation of America, as had been agreed by the parties at the time of making the loan, to secure both the advance of $4501.56 and the salary claim. The debtor at the time of this transfer was insolvent within the meaning of Section 15 of the New York Stock Corporation Law because it had been unable to pay the notes to the Oklahoma Bank and the Finance Corporation in due course and also had failed to pay two lawyers' bills aggregating $5,000 which were rendered December 31, 1931, and not paid until December, 1935. The trustee under section 77B brought the present suit to set aside the transfer of the 15,000 shares and to recover any dividends received by the defendant thereon, and stated in his complaint two causes of action. The advance of $4,501.56 had theretofore been paid and that payment is not questioned.

The first cause of action alleges the transfer of the 15,000 shares of preferred stock as security for the repayment of the advance of $4,501.56 and of the claim of $9,583.34 for back salary. It further alleges that at the time of the transfer the debtor was insolvent or in imminent danger of insolvency, that the transfer was made with intent on the part of the debtor to give a preference to the defendant over other creditors, which fact the defendant knew or had reasonable cause to believe. This cause of action was evidently predicated upon Section 15 of the New York Stock Corporation Law as made applicable to foreign corporations by Section 114 of such Law.

The second cause of action in substance alleges that at the time of the transfer there was no back salary due the defendant and that accordingly the pledge is null and void as against the debtor and its trustee in bankruptcy.

■ Before Brown became vice-president and treasurer of the debtor he was requested by Jones, the president, to render services in these capacities at a salary of $5,000 per year. The master says in his opinion that Brown rendered services outside of his official duties during the year 1931, but found that he did not do so during the periods in 1932 and 1933 for which he claimed back salary. If the defendant had had a valid contract with the debtor to receive a salary for his services in 1932 and 1933 we question whether there would be justification for holding that a preference was given him in payment for past services. Even if the transfer in fact effected a preference it would be very doubtful whether the complainant could recover under Section 15 of the New York Stock Corporation Law, as that section is made applicable to foreign corporations by Section 114. Irving Trust Co. v. Maryland Casualty Co., 2 Cir., 83 F.2d 168, 170, 111 A.L.R. 781. To avoid a preference under the first clause of Section 15 there must be a "refusal" of the corporation to pay its notes or other obligations when due and we doubt whether there was such a "refusal". Under the second clause there must not only be proof that at the time of the transfer the corporation was insolvent, or its insolvency imminent (in the sense of being unable to pay its obligations in due course), but that it intended to give a preference and that the person receiving the preference then had reasonable cause to believe that the conveyance would effect one. We are not satisfied that, if a valid claim for back salary existed, either the corporation or Brown could be said to have intended a preference or to have believed that the transfer would effect one. It must be remembered that after Brown had obtained the shares of stock in November, 1933, the corporation continued business for two years before the petition under section 77B was filed and in the meantime substantially reduced its obligations to the Oklahoma Bank and the Finance Corporation. There was no finding of insolvency by the master and though in the sense of inability to meet existing obligations it existed in November, 1933, we should hesitate to find that there was an excess of liabilities over assets when the transfer was made. The existence of such an excess would be important as a basis for finding an intent to prefer and, if there was no such excess, it could not be supposed that the corporation or the defendant believed that a preference would be effected by the transfer. While the company was from time to time financially embarrassed it was not proposing to wind up, and there was a reasonable probability that it would weather the storm. Dill & Collins Co. v. Morison, 159 App.Div. 583, 144 N.Y.S. 894; Drewen v. Union Discount Co., 2 Cir., 32 F.2d 691, 693.

■ The trouble with the defense is that during the years for which Brown claims back salary he is not shown to have rendered services outside those incident to his ordinary duties as vice-president and treasurer. Even if he supposed all along that he was continuing to work at the compensation originally promised him by Jones and if his failure to include his claim in the annual statements of the corporate finances, or to have it entered as an accrued liability on the books of the corporation may be disregarded as an inadvertence, he is still met by the objection that compensation for the years 1932 and 1933 was never duly authorized. His difficulty is not that he was not employed by Jones, or that he did not render services in the belief that he was entitled to the salary that Jones promised him, but that Jones had no power to fix the salary for services of an officer who was in the fiduciary position of a director when the services were only those within the ordinary duties of such officer and cannot be

said to have been special or in addition to such duties. An officer who is also a director is not entitled to compensation for performing his ordinary official duties without authority from the board of directors. The president can only fix the compensation of an officer-director for services ·that are special and beyond the ordinary duties of the office, and where the president is empowered under the charter and by-laws to employ a third person for the same purpose. Gaul v. Kiel & Arthe Co., 199 N.Y. 472, 476, 477, 92 N.E. 1069; Bagley v. Carthage, W. & S. H. R. Co., 165 N.Y. 179, 58 N.E. 895; Fox v. Arctic Placer Mining & Milling Co., 229 N.Y. 124, 128 N.E. 154; Bailey v. Buffalo Crosstown Railway Co., 14 Hun, N.Y., 483; Jackson v. New York Central R. Co., 2 Thomp. & C. 653; Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1, 3; Chandler v. Monmouth Bank, 13 N.J.L. 255.

It is argued that the directors ratified what the president did in this case. We do not think their action was equivalent to such a ratification. When they heard that the defendant wanted security for back pay, two of the board objected and asked whether he had ever been voted a salary by the board. On examination it was found that he had not. The objection was sufficient to prevent a' corporate resolution to pay him back salary, or to ratify Jones' action. It is also argued that there was a ratification because the directors took no steps to avoid the transfer when Jones reported to them at the meeting on December 7, 1933, that the officers had executed a note for $15,000 to Brown covering his loan and back salary, that the security for the note was to be 15,000 shares and that counsel had advised that the transaction was within the officers' powers. The stock had then been transferred and the services had been performed. There is no evidence that the board authorized or was asked to authorize or ratify the transaction. Nothing had happened but a protest by two members of the board which had never been retracted. The legal advice given as to Jones' powers to employ Brown was erroneous and could have no effect except to mislead the board as to its rights and duties and to persuade the members that any further steps in the matter would be futile. We think there was no act on its part which showed a ratification.

For the foregoing reasons the decree requiring the defendant to return the 15,-000 shares of stock to the complainant-trustee must be affirmed. While the defendant may have believed that he was entitled to pay for the two years, he had no contract for compensation which can be lawfully enforced.

The decree of the court below requires the defendant to account for all the dividends received upon the stock and also to pay over such amount as he shall be found to have received. He was entitled to payment of his loan and interest and the stock, so far as it was given to secure this payment, was properly pledged and he has been paid from some source. In so far as he was paid out of the dividends from the pledged stock he should not be accountable for dividends. He is only accountable for any dividends received in excess of the principal and interest of his loan. The decree directing the transfer of the 15,000 shares of stock to the complainant, together with a reference and an accounting, is affirmed, with the modification that the defendant shall not be required to account for and pay any dividends received by him in payment of his loan.

The decree as thus modified is affirmed.