ANTHONY ALVES et al., Plaintiffs, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, New York County, February 29, 1952.

*William F. Cassin, Edward J. Barry* and *Alfred J. Callahan* for plaintiffs.

*John P. McGrath, Corporation Counsel (Michael J. Kilcommons* of counsel), for defendant.

AURELIO, J.  The action is brought to recover the reasonable value of services performed by plaintiffs for the board of elections of the City of New York.  Plaintiffs are employed as custodians and custodian engineers by the board of education of the City of New York.  They work under the indirect system of custodial operation.  Each receives a compensation allowance as prescribed by a regular services schedule.  The regular services schedule for the board of education terminated at 5:00 P.M. on week days and at 12:00 noon on Saturdays.  From the allowance received each custodian pays his helpers for their regular services at hourly rates prescribed by the board of education.

During the years from 1943 through 1948 plaintiffs performed services in connection with the use of the public schools on registration, primary, and election days.  The services consisted of setting up booths; tables and chairs for election board officials; barricades between election boards; maintaining the places in a clean and safe condition; supplying heat for the school buildings; and generally making the schools available for the uses and purposes of the board of elections of the City of New York.

Section 66 of the Election Law of the State of New York, in part, provides: " § 66. *Designation of places for registry and voting.*  *  *  *  3. A schoolhouse or other public building or any building exempt from taxation shall be designated, if the use of the same as a registration and polling place will not interfere with its customary use, and if it be so situated as to be convenient to the voters residing in the election district. The expense, if any, incidental to its use under such designation shall be paid like the expense of other registration and polling places.  Whenever a school or other public building is located in an election district and the registration and polling place of such district is not located in a school or other public building, a statement of the reason for not designating such building must be entered by the board charged with the duty of making such designations in its minutes or other record."

Section 93 of the Election Law of the State of New York, in part, provides: " § 93. *Payment of election expenses.* 1. The expenses of providing polling places, guard rails, voting

booths, supplies therefor, ballot boxes and other furniture of the polling place, for a primary or other election, and the compensation of the election officers in each election district, shall be a charge upon the town or city in which such election district is situated, except that such expenses incurred for the purpose of conducting a village election not held at the same time as a general election shall be a charge upon the village. * * * 4. All expenses of the board of elections of the city of New York shall be a charge on such city.''

Section 414 of the Education Law of the State of New York, in part, provides: '' § 414. *Use of schoolhouse and grounds out of school hours.* Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. The trustees or board of education may adopt reasonable regulations for the use of such schoolhouses, grounds or other property, when not in use for school purposes, for such other public purposes as are herein provided. Such regulations shall not conflict with the provisions of this chapter and shall conform to the purposes and intent of this section and shall be subject to review on appeal to the commissioner of education as provided by law. The trustees or board of education of each district may, subject to regulations adopted as above provided, permit the use of the schoolhouse and rooms therein, and the grounds and other property of the district, when not in use for school purposes, for any of the following purposes: * * * 5. For polling places for holding primaries and elections and for the registration of voters and for holding political meetings. But no political meetings shall be permitted unless authorized by a vote of a district meeting, held as provided by law, or, in cities by the board of education thereof. Except in cities, it shall be the duty of the trustees or board of education to call a special meeting for such purpose upon the petition of at least ten per centum of the qualified electors of the district. Authority so granted shall continue until revoked in like manner and by the same body as granted.''

Pursuant to the statutory provisions hereinabove set forth, the board of elections of the City of New York would write to the board of education advising it when and where a primary election, registration of voters or a general election was to be conducted, requesting the use of specific schools for such purposes and asking that the board of education notify the

custodian engineers of all schools in which polling places were to be located with regard thereto. In compliance with such requests, the board of education would notify the custodians of the various schools to be used that permission had been granted to the board of elections of the City of New York to use the schools, advising them of the dates and hours of use and the number of polling places and equipment incidental thereto that was to be supplied.

The services rendered by the plaintiffs were all in compliance with such notifications and form the basis of the present action. It is obvious that these services were not performed under the regular services scheduled for the board of education. Equally obvious is that they were not gratuitously and voluntarily tendered without expectation of compensation. Admittedly, there was no express contract between the plaintiffs and the City of New York for the payment of these services. It is, however, a fundamental principle of law that " If the contract be not expressed, it may be implied from the mere rendition and acceptance of the service. The presumption is created that such services are to be compensated, because no one is expected to labor without hire. (*Barney* v. *Fuller*, 133 N. Y. 605.)" (*Fox* v. *Arctic Placer Min. & Milling Co.*, 229 N. Y. 124, 128.)

This presumption is not overcome by the resolution adopted by the board of elections of the City of New York that " No compensation is to be paid by this board to custodian engineers of public schools, public buildings and public libraries, in connection with the primary, registration and general election and that the Board of Education be notified accordingly, for the reason that the budget contains no appropriation for such purposes." (The parties have stipulated that a similar resolution was passed and adopted for the years 1943 through 1948.) The very resolution limits the reason why no compensation would be paid. Hence, while it may be said plaintiffs knew they would have difficulty in obtaining compensation, it certainly does not indicate rendition of services without expectation of pay. This conclusion is fortified by the fact that plaintiffs were paid for similar services by defendant previous to and after the period here involved and by the repeated attempts by plaintiffs to obtain compensation for such services.

It is argued that the board of elections of the City of New York has no power to enter into contracts, express or implied, for plaintiffs' services since the expense of such contracts was not within its appropriations. This argument is untenable. The defendant was under a mandatory duty to appropriate the

amount necessary to meet the expenses of the board of elections of the City of New York as required by section 93 of the Election Law of the State of New York. Its failure to do so is no defense to this action. To hold otherwise would permit the defendant, by the simple expedient of failing to make an appropriation for a mandated expense, to defeat every statute imposing similar directory provisions.

The other defenses raised are likewise unavailing.

Judgment is accordingly rendered in favor of the respective plaintiffs, in accordance with the stipulation of the parties dated February 21, 1952. The above constitutes the decision of the court as required by section 440 of the Civil Practice Act.

Settle judgment.