Bergan, J. (dissenting.)
The action by Dr. Shapira lays out the nature of the controversy and illustrates the problem in the other cases considered on this appeal. Dr. Shapira was in special contractual relationship with defendant United Medical Service, Inc. He agreed, it was found at the trial, to render services under the terms of the defendant’s service contracts to such of defendant’s subscribers “ as I accept for treatment ”. Defendant expressly agreed to “ pay benefits available under the Service Contracts ” to Dr. Shapira.
It is undisputed that Dr. Shapira is a surgical specialist; that he personally examined and successfully performed a surgical operation on Caleen Sinnette, a 10-year-old patient, who, as a member of a family group covered by defendant’s contract, was, by definition, a “ subscriber ” to defendant’s services for a sufficient premium paid to defendant.
There is no evidence in the record to support the view that the relationship between physician and subscriber-patient was not personal. Dr. Shapira was called as a specialist to examine the patient by a pediatrician in the out-patient clinic at the hospital. He examined her as a physician; he talked with her father, who was also a physician; advised an immediate operation, and operated on her.
*220 To hold that the relationship of physician and patient does not arise on these facts alone runs against established procedures in modern hospitals and in the practice of present-day medicine. In countless instances this is the way a surgeon or other specialist is called into a case to render treatment.
It is not necessary to such a medical relationship and its resulting mutual obligations that the undertaking to perform an operation be parsed out in words on one hand and an agreement to pay for it be parsed out in words on the other. That a fee is to be earned is overwhelmingly inferred and implied from the situation of medical examination and medical treatment. Indeed, in modern practice a patient may have little or no conscious contact with the surgeon who operates on him.
And so the physician-patient relationship' having been created and the medical services performed, the fee has been earned unless in some way the law prohibits it. No law has been cited except subdivision c of section 585 of the New York City Charter, which provides that members of the medical staff shall serve without compensation in the wards of the hospital except from “ patients who carry sickness or accident insurance which covers physicians’ fees ”.
The intent of the statute, thus, was not to prohibit the collection of fees chargeable to insurance coverage; and, although the coverage provided by defendant may, perhaps, not literally be “sickness or accident insurance”, it is broadly similar enough to fall within the statutory permission.
The proof is that, by long practical construction by the defendant itself, its contracting physicians, and its subscribers, such fees were included; and defendant paid under its contract with subscribers and physicians fees earned in the same hospital in exactly the same way Dr. Shapira’s fee was earned in this case.
No just reason exists why this defendant should get a windfall instead of paying its obligation. That Dr. Shapira was employed by and paid a salary by a medical college and as part of his teaching program he gave service to indigent patients in the city hospital is no help to defendant’s defense. The arrangement with the hospital left him free also to practice medicine and to charge fees, as the very service agreement between him and the defendant itself demonstrates.
*221 It is entirely irrelevant to defendant’s obligation what Dr. Shapira did with the fees he was entitled to receive. He might have assigned them to a golf club; instead, he made a contribution of them by assignment to a public purpose in a fund to improve facilities for the treatment of the sick. It makes a harsh case to allow defendant to escape liability on this kind of a defense.
Nor is it relevant what rulings the Internal Revenue Service had made some years earlier about taxability of the fees. The fees would to a large extent be deductible if, as it happened here, they were given to a charitable purpose. The Internal Revenue Service may have been right or wrong as a matter of law in ruling they were not taxable in the first instance, but it is not much of a legal defense to a debtor to suggest that its creditor will not pay the kind of an income tax the debtor thinks he should pay.
There is no issue of fact here. The question of ‘ ‘ implied contract” is often a question of fact, but here the facts are in this aspect of the case undisputed and the decision whether or not there has been an implied contract made out is, on these undisputed facts, a question of law (Fox v. Arctic Placer Min. & Milling Co., 229 N. Y. 124).
The order in each case should be reversed and judgment granted for plaintiff.
Chief Judge Desmond and Judges Dye, Van Voorhis and Soileppi concur with Judge Burke; Judge Bergan dissents in an opinion in which Judge Fuld concurs.
In each action: Order affirmed.