Suarez, P.J.
(dissenting). The issue on this appeal is whether the terms of the written commission agreement signed by the president of defendant’s board of directors were ratified by the board’s decision to consummate the lease transaction procured by plaintiff. Since I find that the terms of the written commission agreement were so ratified, I would reverse and grant judgment to plaintiff on the first cause of action for $45,955.67.
Plaintiff, a former member of the board of directors of the defendant cooperative corporation, is seeking to collect the balance of a brokerage commission due under a written commission agreement, signed by the president of the defendant cooperative corporation. The prior decision and order of this court (see Strax v Murray Hill Mews Owners Corp., NYLJ, Dec. 8, 1995, at 30, col 4), as well as the subsequent decision of the Civil Court dismissing the defendant’s claims of overreaching, bad faith, self-dealing, breach of fiduciary duty, conflict of interest and unclean hands, preclude the argument that there are any legal impediments that would prevent plaintiff, an attorney and director, from entering into a commission agreement with the cooperative corporation, nor were such impediments demonstrated upon the retrial.
Section 12 of the bylaws of the cooperative corporation, parroting the language of Business Corporation Law § 713 (a), *69 provided, in pertinent part, that contracts between the cooperative corporation and its directors were neither void nor voidable by virtue of that fact alone, but were viable upon ratification of either the board of directors or the shareholders. Section 13 of the bylaws, in accordance with well accepted common-law doctrine (see Fox v Arctic Placer Min. & Milling Co., 229 NY 124, 128-131 [1920]), provided that the directors of the cooperative corporation could not receive compensation for their acts on behalf of the cooperative corporation in the absence of an express contract.
Plaintiff had an express written contract, signed by the president of the cooperative corporation, and the questions, as stipulated upon the second trial of the action, were whether the written commission agreement could be enforced in the absence of ratification by the board of directors and whether the terms of the commission agreement were ratified by the board’s decision to consummate the lease transaction procured by plaintiff.
The court is keenly aware of strong public policies which dictate that transactions between directors and their corporations be subject to close scrutiny (see Gerdes v Reynolds, 281 NY 180, 184 [1939]; Schachter v Kulik, 96 AD2d 1038 [2d Dept 1983]), and should be set aside if there is any hint of improvidence, oppression, unfairness to the corporation or undue advantage (see Aronoff v Albanese, 85 AD2d 3 [2d Dept 1982]). The burden is on the interested director in such cases to demonstrate that the transaction was fair and reasonable to the corporation at the time it was entered into (Business Corporation Law § 713 [b]; see Sage v Culver, 147 NY 241 [1895]; Mun-son v Syracuse, Geneva & Corning R.R. Co., 103 NY 58 [1886]). There was no finding that the commission agreement entered into by plaintiff and the cooperative corporation was oppressive or unfair to the corporation or that it was procured by fraud, coercion or overreaching. (See Strax v Murray Hill Mews Owners Corp., supra.) Indeed, the terms of the commission agreement were nearly identical to the terms of the standing commission agreement the cooperative corporation had with the managing agent. The commission agreement with the managing agent, whose principal, it is noted, also was a member of the board of directors, establishes that brokerage services are not within the duties of the directors. Defendant, having received and accepted the benefit of plaintiff’s work, and having acknowledged the value by paying the commission to the managing agent who did not broker the lease transaction, should pay plaintiff the commission which she earned.
*70 The majority takes the quotation from Bagley v Carthage, Watertown & Sockets Harbor R.R. Co. (165 NY 179, 182 [1900]) out of context. (Majority op at 67-68.) The full sentence reads:
“It is the general rule that a director, assuming office as such without any agreement as to compensation, is presumed to render his official services gratuitously; for he assumes thereby, in a sense, a trust relation towards the company, and it would be against sound policy to permit him to assert claims for services which were within the line of his duties.” (165 NY at 182; emphasis supplied.)
That sentence is amplified by the following sentence: “But, when he is employed to perform services for the benefit of the corporation which are not within that line, there is not the same reason for denying him the right to be compensated.” (Id.; emphasis supplied.) It is abundantly clear that lease negotiations and brokerage services were not within the scope of plaintiff’s duties as a member of the board of directors. The decision by the board of directors, which was contrary to the legal opinion solicited by one of the directors, to pay the same commission demanded by plaintiff to the managing agent, who did not procure the tenant or negotiate the lease, and whose principal was also a director, lends further credence to plaintiffs claim.
Much of the testimony at trial was devoted to the question of whether the board of directors was aware of the fact that plaintiff was seeking to broker the lease transaction for a full commission prior to the July 1987 meeting where the completed lease proposal was formally presented. Several board members testified that they were aware that plaintiff was involved and was seeking to get a commission, and at least one board member went so far as to solicit a written legal opinion whether commissions could be paid to someone other than the managing agent if that person successfully procured a commercial tenant. Both the written commission agreement and the written opinion of outside legal counsel were in evidence at the second trial. This evidence further supports a finding that plaintiff was not acting within her duties as a director when she procured the tenant and negotiated the lease. Although a director might be selfless enough to procure tenants and negotiate lease transactions on behalf of their corporations without thought of remuneration, such actions do not fall within the director’s official duties, as outlined under article II of the defendant’s bylaws. The trial court’s finding to the contrary, and the majority’s affirmance of such finding, are against the weight of the evidence.
*71 Even assuming, arguendo, that the board of directors had no prior knowledge of the commission agreement, or of the fact that plaintiff was seeking to be paid for brokering the lease transaction, it is clear that the board of directors was fully informed of the fact that plaintiff was acting as, and demanding commissions as, an independent broker under a written commission agreement at the time that the board voted to accept the tenant that plaintiff procured. Also clear from the testimony is the fact that the directors voted to repudiate the commission agreement with plaintiff but to retain the benefits of that contract by entering into a lease transaction with the tenant that plaintiff procured with the same essential terms in the executed lease as in the lease which plaintiff had negotiated. (See New York Trust Co. v American Realty Co., 244 NY 209 [1926].) New York Trust Co. did not involve, as the majority states (majority op at 68), the authority of a corporate officer or director to enter into contractual agreements with unrelated third parties, since the director in question, one George F. Underwood, was the president and director of defendant American Realty Company as well as a director of the guarantor of the subject notes, International Paper Company, which owned all the capital stock of American Realty Company. The plaintiff was the trustee under a deed of trust from Underwood, and Underwood and his close relatives were the beneficiaries of the trust. The Court of Appeals held that the defendant corporation could not repudiate the contractual obligation to Underwood and at the same time retain the benefits of the contract to purchase lands owned by Underwood. If the contract with Underwood was valid, the corporation must pay the price; if invalid, the corporation was required to rescind or repudiate the entire contract, which it did not do. (Id. at 217.)
In the instant matter, defendant retained the benefit of the lease procured by plaintiff and should pay the balance of the commission. Plaintiff is entitled to judgment for the commission, less the amount recovered from the managing agent, totaling $45,955.67. Judgment on plaintiff’s first cause of action should be entered accordingly.
McCooe and Gangel-Jacob, JJ., concur; Suarez, PJ., dissents in a separate memorandum.