In the Matter of EGAN R. RUSSELL, Appellant, against ELLSWORTH B. BUCK et al., Constituting the Board of Education of the City of New York, Respondents.

Argued January 8, 1945; decided March 1, 1945.

*Frederick Evan Crane, William F. Cassin* and *Edward J. Barry* for appellant.   I. The Appellate Division erred in limiting

and restricting the provisions of section 889 by judicial construction. (*Matter of Putnam* v. *Marshall*, 286 N. Y. 485; *Rowland* v *Mayor, etc., City of New York*, 83 N. Y. 372; *Matter of New York State Labor Relations Board* v. *Hudson*, 267 App. Div. 763, 293 N. Y. 671; *Lyon* v. *M. R. Co.*, 142 N. Y. 298; *Matter of Cole*, 235 N. Y. 48; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *Matter of Moss* v. *Norman*, 64 N. Y. State Dept. Rep. 84; *Matter of Mahoney* v. *Board of Education*, 179 App. Div. 782.) II. The acts of respondents are illegal. (*Matter of Putnam* v. *Marshall*, 286 N. Y. 485; *Nelson* v. *Board of Higher Education*, 263 App. Div. 144, 288 N. Y. 649; *Matter of Adams* v. *Board of Higher Education*, 263 App. Div. 804, 288 N. Y. 652; *Dexter* v. *Board of Higher Education*, 293 N. Y. 39; *Matter of Cox* v. *Board of Education of the City of New York*, 178 Misc. 95, 263 App. Div. 740; *Matter of Cross* v. *Board of Higher Education of the City of New York*, 260 App. Div. 907.)

*Ignatius M. Wilkinson, Corporation Counsel (Joseph G. De Vito, Joseph F. Mulqueen, Jr.*, and *Edna Glassman* of counsel) for respondents. I. The 1925 schedule of compensation for duly authorized extra custodial services was not a salary schedule, and it is not, therefore, within the purview of section 889 of the Education Law. (Greater New York Charter, § 56; L. 1901, ch. 466, as amd.; *Hogan* v. *Board of Education*, 200 N. Y. 370; *Matter of Dobrovolny* v. *Prendergast*, 219 N. Y. 280; *Matter of Putnam* v. *Marshall*, 286 N. Y. 485.) II. The work performed by custodians during summer months is part of their regular employment for which they are compensated under their annual salaries. (*Juddson* v. *Board of Education of the City of New York*, 255 App. Div. 1024; *Matter of Langhans*, 65 N. Y. State Dept. Rep. ——, July 15, 1944; *Matter of Shapiro* v. *Bd. of Education*, 250 App. Div. 57, 274 N. Y. 643.)

DESMOND, J. Petitioner is the custodian-engineer of a New York City public school. He and many others work under the so-called " indirect system " — that is, he is required, out of the compensation he receives from the Board of Education, to pay the wages of necessary helpers hired by him. For many years such custodians were paid under two different coexisting schedules. One of those schedules fixed annual rates of pay for " regular services "; the other provided for additional

compensation, at hourly rates, for certain " duly authorized extra services " described therein. In 1942 the Board of Education, by resolution, did away with the added remuneration for such extra services as were performed during daytime hours in the summer vacation period. Petitioner brings this proceeding to assert his claim that such a discontinuance of extra pay, for services performed when the schools are in use during the summer recess, is illegal under section 889 of the Education Law, the so-called " Salary Freezing Law " of 1931 (L. 1931, ch. 540). Special Term granted the relief prayed for, ordering the Board to rescind its 1942 resolution. The Appellate Division, however, reversed, holding that when the Legislature in 1931, by amending section 889, put a floor under public school salaries, in New York City, it did not thus protect " compensation for casual services which it was within the power of the Board of Education, at any time, to deem included within the regular work." (267 App. Div. 784.)

We can only speculate as to how the custom first arose of paying these " indirect service " custodians an annual stipend for regular work and additional hourly increments for such work as they were called upon to do after school hours and on Sundays and during the long vacation. We know, however, that the custodians were so paid under separate schedules for " regular " and " extra " work, for many years before the State began to exercise a measure of control over the remuneration of employees of the common schools. The journals of the Board show the adoption of " extra service " schedules in 1908, 1909, 1910, 1924 and 1925. Other schedules setting forth the annual rates for " regular services " were similarly set up at intervals. In 1920 when a State statute (" Lockwood-Donahue Law ", L. 1920, ch. 680) required that all New York City school department " compensation or salaries " be increased, the Board of Education augmented the amounts payable annually to the custodians for " regular day activities of the schools ". In 1925 the other existing schedule, having to do with the " extra services ", was amended to increase the hourly rates of pay for such services. That 1925 schedule, filed with the State Department of Education conformably to a statute requiring such filing, remains on file there to this day. From 1925 to 1942, when the resolution attacked in this pro-

ceeding was adopted, the custodians have been paid for their
" extra " services, in precise accordance with that 1925 schedule.
In 1927 the Board of Education promulgated and filed at
Albany a new schedule which among other things, provided
for increases in the annual payments to the custodians. That
schedule said nothing at all about " regular " or " extra "
work but it affected only the annual compensation and was,
unquestionably, adopted because of the additional State aid to
education ordered by the " Dick-Rice Law " (L. 1927, ch. 572).
The Board of Education's 1927 resolution authorizing higher
annual rates of pay for custodians said that " any inconsistent
by-laws and resolutions " of the Board were to be suspended.
The Board's attorney now seems to argue that among the
" inconsistent resolutions " thus done away with was the 1925
resolution setting up a separate schedule for extra services.
We see no inconsistency between raising annual salaries and
continuing hourly rates for extra work — apparently the Board
of Education felt the same way about it in 1927 because it
went right on paying the men according to the two schedules,
both of which were left on file with the State Education Depart-
ment. Either the hourly rates were part of the fixed compen-
sation base or the payments thereof were gratuities — and
boards of education are not empowered to distribute largess.

In 1931 came the amendment to section 889 of the Education
Law. The amendment contained a direction, which is still the
law, that the " schedules and schedule conditions fixing the
salaries " of all New York City Board of Education employees
should be not less than " the salaries and salary increments
fixed by the schedules and schedule conditions adopted by such
board of education * * * and on file in the office of the
state commissioner of education on the fifth day of March, nine-
teen hundred thirty-one." Petitioner says that enactment put
a floor under his pay at the two sets of rates shown by the
two schedules then on file. The Board of Education, on the
other hand, asserts that section 889 protected only " salaries ",
that the hourly allowance for extra work is not a " salary ",
that the annual rate only is safeguarded as a " salary " and
that the Board could at any time, before or after 1931, wipe
out the hourly " extra " pay. We do not believe that the
Legislature intended any such distinction. The State, granting

large sums to New York City in aid of its school system, insisted on minimum standards, including minimum pay. That minimum it fixed at the levels existing in New York City on March 5, 1931. By long-established custom these custodians were, as of that date, being paid according to two complementary formulae, on both of which, taken together, their total emoluments were computed. Perhaps the Board of Education, before 1931, could have wiped out the " extra service " pay and ordered that the " per annum " schedule cover everything. But it did not do so. The " freezing " process of section 889 thus made irreducible the hourly as well as the annual rates.

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY and DYE, JJ., concur; THACHER, J., taking no part.

Ordered accordingly.