Anthony Alves et al., Respondents, *v.* City of New York, Appellant.

First Department, June 30, 1953.

*Andrew Bellanca* of counsel (*Seymour B. Quel* and *Michael J. Kilcommons* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for appellant.

*William F. Cassin* of counsel (*Edward J. Barry* and *Alfred J. Callahan* with him on the brief; *Cassin & Barry,* attorneys), for respondents.

DORE, J.   Plaintiffs, 415 custodians of public schools, receiving for their custodial services amounts fixed in defendant's annual budgets for their compensation pursuant to filed schedules, sued defendant, City of New York, to recover for the reasonable value of their extra services rendered to the board of elections of the City of New York between 1943 and 1948 in connection with the use of the public schools as polling places during registration, primary and general election days in said years.   After trial at Trial Term before the Supreme Court without a jury, the trial court on the theory of implied contract granted plaintiffs' judgment for specific amounts set opposite their respective names with interest totalling $291,173.68.   Defendant appeals.

The nature of plaintiffs' employment by the board of education is detailed in *Matter of Russell* v. *Buck* (294 N. Y. 50). They are employed under the so-called indirect system receiving lump sum and other compensation from the board of education to do the custodial work and pay the wages of any necessary helpers hired by them; such helpers, if any, are employees of the custodians, not the board of education or the city.

Between 1915 and 1933 the custodians in addition to the lump sums allocated and paid to them by the city for regular school custodial services, also had received from the board of elections, after resolutions and appropriations duly made by the proper authorities, additional compensation for the extra custodial services rendered by them in connection with the use of the schools at registration, primary and election days. However, in 1934, on the plea and at the request of the then Mayor of the City of New York because of the city's then grave financial difficulties, the board of education by resolution directed its school custodians to perform the services in connection with elections without compensation. Similar resolutions were concededly adopted in subsequent years including the years herein involved. Concededly also the custodians had full knowledge of such resolutions and of similar resolutions by the board of elections indicating that no appropriations would be made for such additional election services and expressly stating that no compensation or no additional compensation would be paid for such services. With such knowledge, the custodians, nevertheless, rendered the extra services directed on registration, primary and election days during all the years from 1935 to 1948, inclusive. While they made pleas and requests to various public officials and an application to the commissioner of education (which was denied), they made no formal demand on *defendant* for payment for the past compensation alleged to be due until August 16, 1949, and did not start this suit against the city until September 2, 1949. The pleas and requests made including requests by representatives of the custodians' and subemployees' respective unions were in the years here in question, seeking relief in the future and did not assert the basic claim here made for past due compensation. Interest against the city runs only from the date a claim is filed and demand is made on the comptroller (*Rapid Tr. Subway Constr. Co.* v. *City of New York*, 259 N. Y. 472 [1932]; *Smith* v. *Board of Educ.,* 208 N. Y. 84). The express terms of the judgment plaintiffs seek to affirm conclusively establish that notices of claim were

not filed until August 16, 1949, " said date being the date upon which their notices of claim were made and filed with the said defendant ". Though plaintiffs, under the circumstances above stated, served in connection with the elections without extra compensation from 1934 to 1949 before making the above demand herein and instituting litigation, plaintiffs here sue for payment only from 1943 because in view of the date of their demand in 1949, they concede that the six-year Statute of Limitations barred any recovery prior to 1943. The amounts and the interest that mathematically would be due if plaintiffs were entitled to succeed, were stipulated to by both parties and on the basis of that stipulation the judgment in the sums awarded was entered.

The trial court held that the services were not rendered gratuitously without expectation of compensation; and although there were no appropriations made during the years in question for the services in question, that defendant was bound by implied contract to make payment therefor; and rendered judgment in plaintiffs' favor accordingly. While the sums allowed to the respective individuals for the extra services performed by them are relatively small, the total is far in excess of a quarter of a million dollars.

We think the judgment appealed from is erroneous and should be reversed; and that the cases relied on in the trial court's opinion do not sustain the recovery allowed.

Plaintiffs were not without custodial compensation during the years in question duly appropriated for them in lump sums and otherwise as custodians pursuant to schedules duly made and such sums were paid every year to them by defendant through its proper agency (Election Law, § 66, subd. 3; § 93, subd. 4); but, as above indicated, the custodians were expressly told each year that no compensation or additional compensation was to be paid them for the extra work in connection with elections. In the state of facts presented and in the face of the city's above express declarations renewed with the custodians' knowledge each year, and plaintiffs' rendition of the service with such express knowledge, we think it was error to hold that an implied contract arose compelling the city to pay.

In *Miller* v. *Schloss* (218 N. Y. 400), relied on by both sides, the court pointed out that the distinction between a contract implied in fact and one implied in law is that in a contract implied in fact assent in some form of the person to be charged is necessary and unless he conducts himself in such manner

that his assent may fairly be inferred, he has not contracted. The resolutions of the board of elections requested the board of education to make available public schools without any expense; the board of education directed the custodians to make the school facilities available for the uses in question without any compensation or additional compensation therefor. The resolutions completely negate any intention on the part of the board of elections or the board of education or defendant to pay the custodians for the election services rendered in the years here in question. The custodians had full knowledge of the defendant's position. Clearly on this record there can be no contract implied in fact.

A contract is implied in law only under well defined circumstances. In the *Miller* case (*supra*, p. 407) the rule was stated as follows: "A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it." In a suit for payment for employees' services based on an implied promise to pay therefor, there must be some showing that the services were rendered with expectation of pay and "accepted under such conditions that the officers of the defendant as reasonable men ought to have understood that they were to be paid for" (*Fox* v. *Arctic Placer Mining & Milling Co.*, 229 N. Y. 124, POUND, J., concurring opinion at p. 131; *McCarthy* v. *Mayor*, 96 N. Y. 1, 8; *Fitzgerald Const. Co.* v. *Fitzgerald*, 137 U. S. 98, 111–112; *Marcy* v. *Shelburne Falls & Colrain St. Ry. Co.*, 210 Mass. 197, 201). In this case not only was there no acquiescence by defendant under circumstances from which it could be inferred that defendant intended to be obligated in some way to pay and that the services were not expected to be gratuitous; but in each year defendant, through its properly authorized agencies, expressly excluded any agreement implied or otherwise that defendant was expected to pay additional compensation by expressly requiring the custodians to render the services, essentially custodial, without any compensation or any additional compensation; and the custo-

dians did so. The state of facts presented militates strongly against implying an agreement, in law or in fact, on the part of the city to pay for such services (cf. *Grombach Productions, Inc.,* v. *Waring,* 293 N. Y. 609, 615, and *Gindorff* v. *Prince,* 189 F. 2d 897, 903). Since plaintiffs rendered the services from 1934 without making any formal demand or claim until 1949, they should be now estopped from contending there were at all times implied contracts to pay between defendant and themselves.

Plaintiffs could have tested their rights by refusing to serve gratuitously or without additional compensation, when directed to do so, promptly making formal demand and initiating legal proceedings. Plaintiffs' demand and suit in 1949 seem to have had an immediate effect because the city did appropriate funds for the board of elections in the 1950–1951 budget to pay the custodians that year for the extra services in connection with the elections. Whether the city has continued to do so in subsequent years to date does not appear in this record. In view of the practice prior to 1934 and the facts relating to the additional time and work involved, it may well be fair for the city in the future to make such appropriations. But this is a suit at law for past services for breach of contract, and for the reasons stated, we think it is not maintainable.

The judgment appealed from should be reversed and the complaint dismissed.

PECK, P. J., GLENNON and BERGAN, JJ., concur; COHN, J., dissents and votes to affirm on the opinion of AURELIO, J., at Trial Term.

Judgment reversed, with costs to the appellant and judgment is directed to be entered in favor of the appellant dismissing the complaint herein, with costs. [See *post,* p. 757.]