■ BETH RIFKA, INC., et al., Appellants, v STATE OF NEW YORK, Respondent.—Levine, J. Appeal from an order of the Court of Claims (Murray, J.), entered August 6, 1984, which granted the State's motion to dismiss the claim.

The facts and circumstances giving rise to the instant claim against the State of New York are as follows: claimant Beth Rifka, Inc. (Beth Rifka) was the operator of a nursing home facility on Staten Island pursuant to an operating certificate issued by the State Commissioner of Health (Commissioner). Beth Rifka had also entered into "provider agreements" with

the State Department of Social Services and the Federal Government for caring for Medicaid and Medicare eligible patients at reimbursement rates set by the Commissioner (see, Public Health Law § 2807 [3]). On August 25, 1982, the Commissioner suspended Beth Rifka's operating certificate for 60 days for violations of health and safety regulations pertaining to patient care and treatment, and ordered that patients at its nursing home be relocated within 30 days. Hearings on permanent revocation of Beth Rifka's operating certificate were then commenced. However, on September 7, 1982, Beth Rifka successfully sought a stay of the order of relocation of patients pending final determination of the revocation proceeding. Stays remained in effect throughout the pertinent period of the instant litigation. After the conclusion of the revocation hearings, by order dated November 22, 1982, the Commissioner revoked Beth Rifka's operating certificate. This determination was confirmed by this court (Matter of Beth Rifka, Inc. v Axelrod, 91 AD2d 1143).

While the revocation proceeding was pending, the Federal Government terminated its provider agreement with Beth Rifka concerning Medicare patients, effective October 31, 1982. Thereupon, as required by Federal regulation (42 CFR 442.20 [b]), the State terminated its Medicaid provider agreement, effective the same date, and advised Beth Rifka that it would no longer reimburse the facility for care of such patients after that date. In response, Beth Rifka then initiated a CPLR article 78 proceeding in the nature of mandamus in Supreme Court, Richmond County, seeking an order directing the State to continue paying for such patients' care at the then prevailing Medicaid reimbursement rates or on a quantum meruit basis. In that petition, Beth Rifka alleged that, despite the termination of the provider agreements, the State was obligated by law to continue to pay for the care of medically indigent patients as long as they remained at the facility. Special Term granted the State's motion to dismiss the petition on the ground that "the papers * * * disclose no basis for the relief sought" (Matter of Beth Rifka, Inc. v Webb, Sup Ct, Richmond County, Nov. 19, 1982, Rubin, J.). A decretal paragraph of the judgment of dismissal entered theron (settled on notice) recited that "the petition fails to state a cause of action for the relief sought". No appeal was taken from the judgment of dismissal.

Thereafter, the instant claim was filed in the Court of Claims, in which Beth Rifka asserts a right to reimbursement for the care of Medicaid eligible patients at its facility from

the date of the termination of the provider agreement until each such patient's ultimate removal and transfer from the facility on or before February 18, 1983. The State moved to dismiss on alternative grounds of res judicata, arising out of the dismissal of Beth Rifka's Richmond County Supreme Court article 78 proceeding, and failure to state a cause of action. The Court of Claims granted dismissal on the latter ground, and this appeal followed.

We affirm. The instant claim is barred by res judicata. In the prior article 78 proceeding, Beth Rifka sought to mandamus the State to make payments in futuro for Medicaid eligible patients' care at its facility subsequent to the termination of the provider agreement with the State. Beth Rifka's present claim covers precisely the same payments for the same care provided to the same patients. The allegations of the instant claim repeat in substance, if not verbatim, the same grounds alleged in Beth Rifka's petition in that article 78 proceeding. The dismissal of that petition for failure to state a cause of action, unappealed from, constituted a final judgment on the merits for res judicata purposes as to the legal sufficiency of the claim asserted therein *(McKinney v City of New York,* 78 AD2d 884, 886; *Flynn v Sinclair Oil Corp.,* 20 AD2d 636, 636-637, *affd* 14 NY2d 853). Clearly, the earlier article 78 petition and Beth Rifka's current claim pertain to the same *transactions,* i.e., the provision of care for medically indigent patients in Beth Rifka's facility subsequent to the termination of the provider agreement and the State's legal obligation to compensate Beth Rifka therefor. Hence, the claim is precluded under current res judicata criteria *(O'Brien v City of Syracuse,* 54 NY2d 353; *Smith v Russell Sage Coll.,* 54 NY2d 185). Since a judgment of liability against the State on the instant claim for the cost of patient care following the termination of Beth Rifka's provider agreement would obviously impair the determination in the prior article 78 proceeding that Beth Rifka was *not* entitled to enforce any such obligation on the part of the State, claim preclusion would have been enforced here even under older res judicata standards *(Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304, 306-307).

Beth Rifka argues, however, that the earlier dismissal should not be given res judicata effect because the court in that article 78 proceeding lacked jurisdiction to grant the relief sought, namely, a direction for the payment of money by the State (citing *Matter of Dunhill Mfg. & Dist. Corp. v State Park Commn. for City of N. Y.,* 42 AD2d 442, 443, *affd* 35

NY2d 657). In other words, Beth Rifka asserts that its claim has always required exclusive adjudication in the Court of Claims. As previously described, however, the gravamen of Beth Rifka's article 78 petition was that the State was under a clear statutory duty to pay for the care of Medicaid patients at any facility that had an extant operating certificate, irrespective of whether a provider agreement with that facility was in effect. The monetary relief sought in the article 78 proceeding was an order directing future payments for future services. If Beth Rifka's assertion of the State's indisputable legal duty had been valid, the petition was otherwise sufficient for purposes of invoking mandamus as an appropriate vehicle for the relief sought (see, Health Care Plan v Bahou, 61 NY2d 814; Matter of Cohalan v Caputo, 94 AD2d 742; Matter of Gunn v Blum, 74 AD2d 872; Matter of Fehlhaber Corp. v O'Hara, 53 AD2d 746; Matter of Pfingst v Levitt, 44 AD2d 157, lv denied 34 NY2d 518; Siegel, NY Prac § 558, at 776). Indeed, Matter of Gunn v Blum (supra), the principal authority relied on by Beth Rifka on the merits of its claim, was such an article 78 proceeding. Accordingly, Beth Rifka is precluded from relitigating its right to enforce the State's obligation to pay for the care of Medicaid eligible patients in its facility following the termination of its provider agreement.

Were we to reach the merits, we would agree with the Court of Claims that Beth Rifka's claim is legally insufficient. Once the provider agreement was terminated, Beth Rifka had no statutory right to compensation arising out of the State's duty to provide Medicaid assistance to its residents (Schwartzberg v Whalen, 66 AD2d 881). Nor, under the circumstances here, where the State specifically advised Beth Rifka that it would no longer pay for the care of Medicaid eligible patients after the effective date of the termination of the provider agreement and never thereafter requested nor acquiesced in the care and treatment of such patients at Beth Rifka's facility, can an agreement on the part of the State to compensate for such services be implied in law or fact (Alves v City of New York, 282 App Div 232, affd 306 NY 813).

Order affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.