Fuld, J.
On November 1, 1960 Savoy Record Company, a New Jersey corporation engaged in making phonograph records, signed two letters, addressed to " Armonía E. Ritmo, Via Rimmassa 68, Genoa, Italy”.[1] In their essential terms, the letters incorporated an understanding by which Savoy was to grant tp Armonía the exclusive right to manufacture and market its records in Italy for a period of two years and, in return, Armonía was to pay a royalty of $8,000 a year for the effective period of the agreement. Both of the letters, lengthy and profuse in detail — one fills 11 pages of the printed record and *3 the other more than 3—contain a paragraph reading as follows:
“ Yon [Armonía] represent and warrant that Cardinal Export Corp., New York, New York is authorized to sign this agreement on your behalf and Cardinal Export Corp., for One Dollar ($1.00) and other good and valuable consideration agrees by its signature to guarantee the payment of all moneys payable to Savoy Record Co., Inc. by you under this contract. If the foregoing meets with your approval, please so indicate your approval in the space provided below.”[2]
After the ££ Very truly yours ” came the signature ££ Savoy Record Co., Inc.
By: /s/ Herman Lubinsky, Pres.”
And to the left, a space or two below and at the margin, there appeared:
" Accepted and Approved :
Cardinal Export Corp., As Agent on Behalf of Armonía E. Ritmo By: /s/ Arthur Lerner ”.
Claiming that over $13,000 in unpaid royalties was owing to it under the agreement, Savoy, in August of 1962, commenced this action against Cardinal, alleging that the latter “ agreed to guarantee all payments due to Savoy ” under the contract. Cardinal moved, pursuant to subdivision 7 of rule 107 of the Rules of Civil Practice (now CPLR 3211, subd. [a], par. 5), to dismiss the complaint on the ground that “ the purported guarantee of payment * * * is unenforceable under the provisions of the statute of frauds ”. It was Cardinal’s position that, since the agreement ‘ ‘ was subscribed by [it] solely as agent and not on its own behalf”, the requirement of the Statute of Frauds (Personal Property Law, § 31, subd. 2, now General Obligations Law, § 5-701, subd. 2) that a "promise to answer for the debt * * * of another person” be “subscribed by the party to be charged ” had not been satisfied.
The courts below rejected Cardinal’s contention and denied its motion to dismiss the complaint. It was apparently their *4 conclusion — to cull from Special Term’s opinion — that it was ‘ clear * * * that the agreement, prepared by Savoy, was intended by it” to provide that Cardinal’s signature as agent serve two purposes, namely, to indicate an acceptance and approval of the contract by Armonía and also to bind Cardinal, in its own corporate capacity, as guarantor of its principal’s obligation.
Any proper consideration of the question of Cardinal’s responsibility under the agreement must proceed from the predicate, settled for this court in Mencher v. Weiss (306 N. Y. 1, 4), that an agent for a disclosed principal “ will not be personally bound unless there is clear and explicit evidence of the agent’s intention to substitute or superadd his personal liability for, or to, that of his principal”. (See, also, Salzman Sign Co. v. Beck, 10 N Y 2d 63, 66-67.) If such an intention can be ascribed to Cardinal at all, it must, by virtue of the requirements of the Statute of Frauds, be gathered from the language, set forth above, of Savoy’s letters. The difficulty we encounter at the outset, in seeking ‘ ‘ clear and explicit evidence ’ ’ of the agent’s intention to be personally bound, lies in the anomalous character of the writing upon which Cardinal’s responsibility as a guarantor must depend. If liability is to be imposed, it must have been the intention of all the parties—Armonía and Cardinal in addition to Savoy—that the signature of Cardinal perform, at once, a threefold function: (a) to bind the principal (Armonia) to the agreement; (b) to support the very agency (of Cardinal) itself, since by a peculiar “ bootstrap ” device the principal is to “ represent and warrant ” the authority of the very agent whose signature is to bind it to the agreement; and (c) to bind the agent (Cardinal) as a guarantor of its principal’s obligation.
The writing states that Cardinal is to signify its agreement to be personally bound “by its signature ”. It may well have been Savoy’s intention, as Special Term noted, that Cardinal’s act of signing once, solely as agent for Armonía, would likewise bind it as guarantor. However, in determining whether there has been compliance with the Statute of Frauds in such a. case, Savoy’s intent or belief is beside the point. What is of crucial importance, as our recent decision in Salzman Sign Co. v. Beck (10 N Y 2d 63, supra) demonstrates, is the *5 intention of the agent, the party to be charged — in this case, Cardinal — to be personally bound. In this context, the writing must be viewed, as it relates to Cardinal, only as an offer to the agent to enter into a binding personal commitment as guarantor and the courts cannot, without more, convert a signature by Cardinal “ As Agent on Behalf of Armonía ” into a binding acceptance of such an offer.[3]
On its facts, the present case is virtually indistinguishable from Salzman (10 N Y 2d 63, supra), and the rationale underlying that decision applies with equal force to compel a similar conclusion here. In the Salmian case, two corporations entered into an agreement for the sale of an advertising sign. The contract, containing a provision that (10 N Y 2d, at p. 65),
‘ ‘ Where the Purchaser is a corporation, in consideration of extending credit to it, the officer or officers signing on behalf of such corporation, hereby personally guarantee the payments hereinabove provided for ”,
was executed on behalf of the corporate purchaser by one of its officers who signed as “Irving Beck pres ”. Upon default by the buyer, the corporate seller sought, in reliance upon the above statement, to hold Beck personally liable for the payments due under the agreement.
The complaint was dismissed upon the defendant’s motion and, in affirming that disposition, we held, in language too clear to be misunderstood, that the contract clause did not, in and of itself, constitute the ‘ ‘ clear and explicit evidence ’ ’ of intention required to subject an agent to personal liability for his principal’s debt. Although the court observed that a “ plausible argument ’ ’ could be made that a corporate officer who signs his name to such a contract is presumed to have read and understood it, “ and so should be considered bound by its plain language ’ ’, we concluded that to allow recovery against the signing agent, simply on the strength of the clause above referred to, ‘ ‘ would thwart the purposes of the Statute of Frauds ” (10 N Y 2d, at p. 66). The “ better rule ”, the court declared, is that “ the statement in the contract purporting to *6 bind * * * individually ’ ’ the party signing in a representative capacity ‘ ‘ is not sufficient for Statute of Frauds purposes without some direct and explicit evidence of actual intent ’ ’ on his part to bo so bound (10 N Y 2d, at p. 67).
There is in the case before us no such “ direct and explicit evidence ’ ’, surely no more evidence of intention on the part of the agent (Cardinal) to be bound than there was in the Salsman case. The evidence to be gleaned from the writing, if not all the other way, is at best highly equivocal and ambiguous. Not only did Cardinal sign solely “ As Agent ” but it underscored the limited nature of the signature by adding “ on Behalf of Armonía ”. The clause in the letters addressed to Armonía that its agent,' Cardinal, “ agrees by its signature ” to guarantee its principal’s payments is not materially different from the language in the agreement in Salsman to the effect that the officer “ signing on behalf of such corporation ” guarantees the payments there involved. In point of fact, if a difference is to be discerned, it is that the words of the clause here under consideration generate greater uncertainty, as to the implications of the agent’s signing solely on the principal’s behalf, than did the corresponding clause in Salsman—which, in the plainest of terms, sought to bind the officer “ signing on behalf of such corporation ’ ’. In any event, though, such a clause does not furnish the direct and explicit evidence demanded by the law.
That the Salzman case (10 N Y 2d 63, supra) was concerned with an individual who signed as agent of a corporation while the present case involves a corporation signing on behalf of another company is, contrary to the contention urged upon us, a distinction without a difference. Our decision in Salsman but reflects the public policy which underlies the Statute of Frauds. Designed to safeguard against false claims of agreement, that statute is based upon the sound consideration of policy that, in a situation such as the present, an agent should be protected against the plausible claim, which might often be falsely asserted, that he engaged to insure his principal’s performance. (See Workman, Inc., v. Lincoln, 220 App. Div. 670, 671; see, also, 3 Williston, Contracts [3d ed., 1960], § 448 et seq.) The obligation of a guarantor is, admittedly, a heavy *7 one, and the courts should refrain from foisting such an obligation upon a party, be he individual or corporation, who simply signs as agent, absent the requisite clear and unequivocal evidence, to be gathered from the writing itself, that he intended to assume such a liability.
The order appealed from should be reversed and the complaint against Cardinal dismissed, with costs in all courts. Question certified answered in the negative.

. “Arnionia E. Ritmo” is an Italian phrase meaning “Harmony and Rhythm ”,

. This is the clause from one of the letters; the clause in the other letter is identical in sense, although it omits the last sentence.

. The present ease differs significantly from Mencher v. Weiss (306 N. Y. 1, supra); in the latter case, the defendant affixed his signature not only in a representative capacity but individually by use of the term “ Member ”,