IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

Rapid Capital Finance, d/b/a     :
Rapid Capital Funding,     :    C.A. No. K17C-01-017 WLW
    :
     Plaintiff,     :
    :
    :
   v.     :
    :
    :
Golden Chariot Motors, LLC and     :
Olukayode Adamolekun a/k/a     :
Kayode Adamolekun,     :
    :
     Defendants.     :

Submitted: January 11, 2019
Decided: January 23, 2019

**ORDER**

Upon Defendant Olukayode Adamolekun's
Motion for Summary Judgment.
*Granted.*

Patrick Scanlon, Esquire of Patrick Scanlon, P.A., Milford, Delaware; attorney for Plaintiff.

Tasha M. Stevens, Esquire of Fuqua Willard Stevens & Schab, P.A., Georgetown, Delaware; attorney for Defendants.

WITHAM, R.J.

## INTRODUCTION

Upon consideration of the Motion for Summary Judgment filed by one of the Defendants in this case, Olukayode Adamolekun, also known as Kayode Adamolekun, the opposition of the Plaintiff, Rapid Capital Finance, LLC d/b/a Rapid Capital Funding and oral arguments presented by the parties, it appears that:

## FACTUAL AND PROCEDURAL HISTORY

1. The Plaintiff, Rapid Capital Finance, LLC d/b/a Rapid Capital Funding ("RCF"), is a business that finances companies by buying their future receivables at a discount.

2. One of the named Defendants, Golden Chariot Motors, LLC, ("Golden Chariot") was previously in the used car business. Golden Chariot was solely owned by the Co-Defendant, Olukayode Adamolekun, also known as Kayode Adamolekun, ("Adamolekun").

3. Golden Chariot entered into several business transactions with RCF during its span of operations. In each transaction, Golden Chariot, sold, at a discount, credit card payments that the organization would receive in the future.

4. The transaction at issue is a May 4, 2016 Merchant Agreement ("Agreement") where Golden Chariot sold $91,000.00 worth of future receivables to RCF for $70,000, for which Golden Chariot received $35,795.00 in total.[1]

5. Per the Agreement, Golden Chariot was required to make weekly payments

---

[1] Pre-trial stipulation at 2. $35,795.00 was the amount of deposit because approximately $35,000.00 of the $75,000.00 was used by the Defendant to pay off a previous merchant agreement.

to RCF totaling approximately $1,900.00 until the $91,000.00 balance had been paid. These payments were to be automatically withdrawn from an identified bank account with Citizens Bank,[2] that RCF was authorized to access and make automatic clearing house withdrawals from on a weekly basis.

6. In the event of Golden Chariot's default, Rapid Capital was contractually entitled to immediately collect the entire unpaid balance.[3] However, in addition to the Agreement, Adamolekun entered into an accompanying Security and Guaranty Agreements with RCF.[4] The security agreement stated:

> [t]o secure Guarantor's payment and performance obligations under this Security Agreement and Guaranty, Guarantor hereby grants [RCF] a security interest in [*Golden Chariot*] LLC...(the "Additional Collateral").[5]

Additionally, the Guaranty stated:

> [t]he undersigned Guarantor(s) hereby guarantees to [RCF] Merchant's performance of all the *representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement...* Guarantor's obligations are due at the time of any breach by Merchant of any *representation, warranty, or covenant made by Merchant in this Agreement*

---

[2] The last four digits of the Citizens Bank account were 2984.

[3] Paragraph 1.11. The Agreement also provided that Rapid Capital was entitled to recover other associated charges, attorneys' fees, and court costs.

[4] *See* D. Ex. C; Pl. Ex. D at 6-7. The Court uses the word "allegedly" for reasons it will discuss below.

[5] *Id.* (Emphasis added.)

3

*and the Merchant Agreement.*[6]

7. After a time, Golden Chariot desired to enter into renegotiations with Rapid Capital regarding the payment schedule and amount per payment that Golden Chariot was bound contractually to make.[7] Adamolekun, as the owner of Golden Chariot, led those efforts and after he failed to receive affirmation from RCF regarding Golden Chariot's request for re-negotiations, Adamolekun closed Golden Chariot's business bank account with Citizens Bank, the account that RCF had previously been granted access, despite the terms of the Agreement prohibiting such an action. Only one payment had been withdrawn from the account from RCF. Neither Golden Chariot, nor Adamolekun (individually), ever disclosed to RCF that the Citizens Bank account had been closed, nor granted them access to a new bank account in Golden Chariot's name established at WSFS Bank. As a result, RCF was unable to withdraw payments owed by Golden Chariot.

8. RCF has received no further payments since the closing of the Citizens Bank account in May 2016. Golden Chariot permanently closed its business and no further collection of its accounts receivables was conducted.

9. RCF filed the present complaint on January 20, 2017, and initially claimed that both Golden Chariot and Adamolekun were liable, joint and severally, for the outstanding principle amount of $86,550.00, plus 6% pre-judgment interest from May

---

[6] D. Ex. C; Pl. Ex. D at 6-7 (emphasis added).

[7] Adamolekun, as the sole owner of Golden Chariot, led those renegotiation efforts.

4

16, 2016, 6% post-judgment interest per annum, and 15% of the amount awarded by the Court for principle and interest as attorneys fees and costs.[8] Golden Chariot and Adamolekun filed their joint reply in opposition on March 30, 2017.

10. Adamolekun alone subsequently filed the present motion for summary judgment on November 7, 2018. RCF filed its timely response in opposition to the motion on November 21, 2018. The Court heard oral arguments on January 11, 2019 and reserved its decision.

## STANDARD OF REVIEW

11. Superior Court Civil Rule 56(c) provides that summary judgment will be granted when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law."[9] The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact.[10] Summary judgment will only be appropriate when, upon viewing all of the evidence in a light most favorable to the non-moving party, the Court finds there is no genuine issue of

---

[8] Rapid Capital then subsequently filed a motion to amend its initial complaint on August 29, 2017 and on September 18, 2017 the parties entered into a stipulation amending the initial complaint to read "Rapid Capital Finance, LLC d/b/a Rapid Capital Funding." Their claims against both Defendants remained the same.

[9] Del. Super. Ct. Civ. R. 56(c).

[10] *VIII-Hotel II P Loan Portfolio Holdings, LLC v. Zimmerman*, 2013 WL 5785290, at *2 (Sep. 19, 2013) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979) (citations omitted)).

5

material fact.[11] In its full consideration of a motion for summary judgment, the Court shall consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with other affidavits, if any" in making its determination to grant or deny the motion.[12] If material facts are in dispute, or the Court determines it "desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not granted.[13]

## DISCUSSION

12. As a preliminary matter, both parties agree that New York law governs the Agreement.[14] With that in mind, the Court will apply the law of New York.

### A. The Court will Consider the Motion as a Motion for Summary Judgment Based on the Parties' Agreement.

13. In his motion for summary judgment, Adamolekun argues that RCF did not adequately plead, or plead at all, that he is liable under the Guaranty agreement and further contends that the Court should not consider that part of RCF's amended

---

[11] *Zimmerman*, 2013 WL 5785290, at *2 (citing *Singletary v. Amer. Dept. Ins. Co.*, 2011 WL 607017, at *2 (Del. Super. Ct. Jan. 31, 2011) (citing *Gill v. Nationwide Mut. Ins. Co.*, 1994 WL 150902, at *2 (Del. Super. Ct. Feb. 22, 1994)).

[12] Del. Super. Ct. Civ. R. 56(c).

[13] *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del.1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir.1957)).

[14] D. Ex. B at § 4.5.

complaint.[15]

14. However, it appears to the Court that Adamolekun's argument is more akin to a motion to dismiss pursuant to Superior Court Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[16] At oral argument, the Court asked both parties, and both, much to the Court's surprise, agreed that the Court should treat Adamolekun's motion as one for summary judgment, rather than a 12(b)(6) motion.

15. In light of the fact that Adamolekun has not properly submitted a motion to dismiss pursuant to Rule 12(b)(6), nor provided RCF notice of its intention to do so, the Court will analyze the motion under summary judgment legal standards.

**B. Adamolekun's Motion for Summary Judgment.**

*i. The Parties' Contentions.*

16. Turning to the merits of the motion for summary judgment, Adamolekun first argues that no facts are in dispute regarding the express terms of the Guarantor agreement and that the document, as constructed, is unenforceable against him pursuant to New York law.[17] RCF contends that while the Guarantor agreement, signed by Adamolekun, is not one of payment, but of performance, it nevertheless guaranteed Adamolekun would insure Golden Chariot's performance of its Agreement with RCF, specifically in regards to access to Golden Chariot's bank

---

[15] D. Mot. at ¶¶ 5-6.

[16] Super. Ct. C. R. 12(b)(6) is a motion to dismiss based on a failure to state a claim upon which relief can be granted,

[17] D. Mot. at 2.

account for payments.[18]

> ## *ii. The Law of the State of New York Supports Adamolekun's Motion.*

17. Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement "unless there is *clear and explicit evidence* of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal."[19] A guarantor's liability is *strictissimi juris*, meaning that liability shall not extend beyond the precise stipulations of the guaranty.[20]

18. This presumption against personal liability prevails even when the officer is a signatory to a contract purporting to bind him personally.[21] The rationale behind the New York rule is that, "[i]n modern times most commercial business is done between corporations," not individual stockholders or officers of the corporation, who, in many instances, own little or no stock in the corporation.[22] This presumption further recognizes that "[t]he obligation of a guarantor is, admittedly, a heavy one and

---

[18] Pl. Reply at ¶ 15. As will be mentioned below, RCF's characterization of Adamolekun's liability appears to have changed from its original and amended complaint.

[19] *Mencher v. Weiss*, 114 N.E.2d 177, 179 (N.Y. 1953); *see also Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir.1991); *Ainbinder v. Kelleher*, 1997 WL 420279, at *12 (S.D.N.Y. 1997).

[20] *Savoy Record Co., Inc. v. Cardinal Export Corp.*, 203 N.E.2d 206, 207 (N.Y. 1964).

[21] *Ainbinder*, 1997 WL 420279, at*12.

[22] *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76 (N.Y. 1961).

the courts should refrain from foisting such an obligation upon a party, be he individual or corporation, who simply signs as agent, absent the requisite clear and unequivocal evidence...that [the agent] intended to assume such a liability."[23]

19. In *Warren–Connolly Co., Inc. v. Saphin,*[24] the New York Appellate Division, First Department, applied this presumption and held that a provision of an "Authorized Dealer Franchise Agreement," signed by the defendant as president of the dealer corporation, that personally guaranteed payment of all obligations incurred by the dealer pursuant to the agreement, did not constitute a personal guarantee enforceable against him individually.[25]

20. While the presumption is not absolute, New York courts rarely find individual liability in these types of cases. In those cases that defendants have been found personally liable, the evidence of the signatory's intention to assume personal liability is overwhelming. For example, in *Paribas Properties, Inc. v. Benson,*[26] a New York court found personal liability when it determined that the evidence documenting the signatory's personal liability was overwhelming, including (1) the fact that the contract was only three pages long, and thus was not a trap for an unwary signatory; (2) that the paragraph that assigned personal liability appeared directly

---

[23] *Savoy Record,* 203 N.E.2d at 209.

[24] 128 N.Y.S. 2d 272 (N.Y. App. Div. 1954).

[25] *Warren–Connolly Co., Inc.,* 128 N.Y.S. 2d at 272.

[26] 536 N.Y.S. 2d 1007 (N.Y. App. Div. 1989).

above the signature line; (3) that the signatory's name appeared in the agreement itself; (4) that the parties negotiated the agreement in depth; and (5) that the signatory was the president and principal shareholder in the corporation.[27]

21. In this case, and unlike the situation in *Paribas*, the evidence of the intention for individual liability is far from overwhelming. The security and guaranty agreements in question, appear to be complete, clear, and unambiguous on their face. Neither contain language, express or implied, that a reasonable trier of fact could conclude that Adamolekun intended to give RCF his personal guarantee against loss. Indeed, the security agreement specifically states that Adamolekun, as the guarantor, "hereby grants RCF a security interest in *Golden Chariot Motors LLC*."[28] In other words, Adamolekun granted RCF a security interest in the business itself, not his personal assets.

22. Assuming arguendo, that the guaranty agreement did contain language tying Adamolekun's guarantee to his personal assets, the guaranty agreement in this case has only one signature line, and does not further indicate that Adamolekun signed the guaranty agreement as an individual or officer of Golden Chariot.[29]

---

[27] *Id.* at 1008-09.

[28] D. Ex. C.

[29] Adamolekun's name is clearly under the portion of the Guaranty and Security Agreement that states: "Guarantor(s) and for the Merchant." Because Adamolekun is identified as Golden Chariot's owner on page 5 of the Agreement, the Court finds that Adamolekun acted as Golden Chariot's agent in this matter. However, as such, the agreement should have been signed twice, pursuant to New York law.

23. Thus, the Court finds that Adamolekun has set forth a prima facie showing of entitlement of summary judgment as a matter of law. In light of this, the burden now shifts to RCF, as the party opposing the motion for summary judgment, to produce clear and explicit evidence sufficient to warrant judgment in their favor or to, at least, establish the existence of material issues of fact which requires a trial of the action.

24. In this case, RCF fails to demonstrate any such evidence. Rather, RCF concedes that "[Adamolekun's] guaranty...is not one of payment, but performance"[30] and that the only guarantee Adamolekun made was to ensure that Golden Chariot would not impede RCF from withdrawing payments from the disclosed bank account. While RCF may have a case for tortuous interference against Adamolekun, it apparently has abandoned its claim that he is jointly and severely liable for the outstanding balance owed by Golden Chariot. RCF has presented no evidence to the Court to defeat New York's strong presumption against imposing personal liability on a company officer, without clear and explicit evidence of his intent to assume personal liability. In consideration of the strong presumption against personal liability and RCF's concession that Adamolekun's guaranty agreement does not hold him personally financially liable, Adamolekun's motion for summary judgment must be granted.

---

[30] Pl. Reply at ¶ 15.

11

## CONCLUSION

25.  For the reasons discussed above, Adamolekun's Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh